**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **VENA LAFONTANO,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MIDLAND CREDIT MANAGEMENT, INC.,**<br><br>**Defendant.** | C.A. No:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Vena LaFontano, by and through the undersigned counsel, complains, states, alleges, and asserts against defendant Midland Credit Management, Inc., as follows:

## INTRODUCTION

1. This action seeks to recover for negligence, substantially assisting violations of the FDCPA, and violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA").

2. In 1977, Congress enacted the Fair Debt Collection Practices Act ("FDCPA"), codified at 15 USC §§ 1692 *et seq.*, in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id*. Congress concluded that "existing laws . . . [we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) and (c).

3. Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "ensure that those debt collectors who refrain from using

abusive debt collection practices are not competitively disadvantaged." *Id.*, § 1692(e). After determining that the existing consumer protection laws were inadequate, Congress gave consumers a private cause of action against debt collectors who failed to comply with the Act. *Id.*, § 1692k.

4. In determining whether a collection letter violates the FDCPA, courts in the Third Circuit apply the "least sophisticated consumer standard." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015). The standard is an objective one, meaning the specific consumer need not prove that she was actually confused or misled. See *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014) ("[T]he FDCPA does not require that a plaintiff actually be confused.").

5. The FDCPA does not ordinarily require proof of an intentional violation, and is considered a strict liability statute, whereby a single violation is sufficient to establish civil liability against a debt collector.

**JURISDICTION AND VENUE**

6. This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337 and 15 U.S.C. § 1692k(d).

7. This court has jurisdiction over defendant Midland Credit Management, Inc. because Midland Credit Management, Inc. regularly conducts and transacts business in this state, and is located in this Commonwealth or has sufficient minimum contacts in this Commonwealth.

8. Venue is proper in this Commonwealth under 28 U.S.C. § 1391(b) because defendant Midland Credit Management, Inc. is located in this Commonwealth and a substantial part of the conduct complained of herein occurred in this Commonwealth.

**PARTIES**

9. Plaintiff Vena LaFontano ("Plaintiff") is an individual who is a citizen of the Commonwealth of Pennsylvania residing in Newtown, Delaware County, Pennsylvania.

10. Plaintiff is a natural person allegedly obligated to pay a debt.

11. Plaintiff is a "consumer" as defined by the FDCPA.

12. Defendant Midland Credit Management, Inc. ("MCM") is a company existing under the laws of the State of Kansas, with its principal place of business in San Diego, California. At all times relevant to this Complaint, MCM has transacted business in this District and in the Commonwealth of Pennsylvania.

13. MCM has transacted business within this Commonwealth as is more fully set forth hereinafter in this Complaint.

14. MCM regularly collects or attempts to collect debts asserted to be owed to others.

15. MCM is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

16. The principal purpose of MCM's business is the collection of such debts.

17. MCM uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

18. MCM is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

19. At all material times herein, MCM's conduct, with respect to the debt complained of below, qualifies as "communication" as defined by 15 U.S.C. § 1692a(2).

20. All necessary conditions precedent to the filing of this action occurred or Defendant waived or excused the same.

## FACTUAL ALLEGATIONS

21. MCM is a wholly-owned subsidiary of Encore Capital Group, which is one of the largest debt collectors in the world. In 2024, MCM purchased record volumes of defaulted consumer debt, totaling $1 billion and collected $1.6 billion from consumers. At the end of 2024, MCM's estimated remaining collections exceeded $5 billion.

22. According to data provided by the Consumer Financial Protection Bureau (the "CFPB"), consumer complaints about debt buyers and collectors attempting to collect money not actually owed by the consumer are by far the most common of all complaints received by the Bureau every year, aside from credit reporting. MCM is near the top for the entire country in terms of the volume of such complaints against debt buyers.

23. For instance, in 2015, the CFPB entered into a Consent Order with MCM, and related entities, for violations of the law, including the FDCPA, which required MCM, and related entities, to pay more than $42,000,000 in restitution and $10,000,000 civil penalty for i) failing to investigate disputes made by consumers, ii) forcing consumers to restart the dispute process each time a debt was transferred to a different debt collector, iii) falsely representing to consumers information regarding a debt when it was known or had reason to believe the information to be inaccurate, iv) engaging in scattershot litigation, v) preventing debt collectors from obtaining account-level documentation regarding consumer debts, vi) submitting affidavits to courts around the country with false or misleading testimony, vii) submitting affidavits to court around the country with false or misleading statements by sellers of the debt, viii) threatening and filing lawsuits to collect time-barred debts, ix) training collectors to create urgency when collecting time-barred debt over the telephone, and x) sending settlement offers to collect time-barred debts without informing the consumer that the debt was time-barred.

24. In 2018, 42 States Attorneys General entered into a settlement with MCM, and related entities, for $6,000,000 related to deceptive debt collection and litigation practices, such as filing affidavits in courts across the country when the affiant lacked personal knowledge related to the statements in the affidavit and did not review the relevant files, also known as robo-signing.

25. Then, in 2020, the CFPB filed an action in this District against MCM, and related entities, asserting MCM, and related entities, failed to comply with the 2015 Consent Order by continuing to engaging in the prohibited conduct in the 2015 Consent Order. *See Bureau of Consumer Financial Protection v. Encore Capital Group, Inc., et al.*, No. 20-cv-1750-GPC-KSC (S.D. Cal. Oct. 16, 2020) (entering stipulation of final judgment.)

26. Despite the foregoing, creditors, including Bank of Missouri ("TBOM"), regularly transfer portfolios of debts purportedly owed by consumers to MCM for purposes of collection.

27. MCM alleges Plaintiff owes a debt to MCM for a personal TBOM account.

28. Plaintiff retained counsel to assist Plaintiff with the TBOM debt.

29. On September 12, 2024, and October 14, 2024, Plaintiff's counsel notified TBOM of its representation of Plaintiff concerning the alleged debt and demanded that all further direct communications with Plaintiff concerning the alleged debt cease (the "Letters of Representation").

30. The Letters of Representation set forth Plaintiff's attorneys' name and address.

31. The Letters of Representation set forth Plaintiff's dispute of the alleged debt.

32. The Letters of Representation instructed TBOM to inform any downstream entities of the Letters of Representation.

33. Creditors, like TBOM, have a pattern and practice of transferring or assigning debts after receipt of Letters of Representation because TBOM renders the account uncollectible once a consumer retains an attorney or provides a cease and desist.

34. MCM asserts TBOM transferred and/or assigned the alleged debt to MCM for purposes of collection.

35. It is standard practice in the accounts receivable management industry, when debts are sold and/or assigned to downstream entities, including debt collectors, for such debts to be identified as subject to attorney representation letters and/or cease and desist letters.

36. It is standard practice in the accounts receivable management industry, when debts are sold and/or assigned in bulk portfolios to downstream entities, including debt collectors, for such portfolios to be identified, either explicitly, or through an indicator in the portfolio's file name, that such accounts are subject to attorney representation letters and/or cease and desist letters, such as "Cease and Desist Bulk," "C&D-POA," "CD-POA," "CND," "CAD," "DSA," or "DSC.".

37. Further, it is in the interest of public policy when debts are transferred and/or assigned to downstream entities, including debt collectors, for all information to be transferred, including notices of representation and cease and desist demands.

38. MCM was notified by TBOM of Plaintiff's attorneys' representation in the transfer file(s) or the transfer file name included a notation which informed MCM that the portfolio was a portfolio of accounts of consumer who were represented by counsel.

39. MCM was notified by TBOM of the Letters of Representation in the account level documentation.

40. MCM was notified by TBOM of the cease and desist in the transfer file(s) or the transfer file name included a notation which informed MCM that the portfolio was a portfolio of accounts that previously provided a cease and desist from further direct communication with the consumer.

41. MCM asserts it is the current creditor of the alleged debt, therefore, MCM would have received all material information and documentation regarding the account, including the Letters of Representation.

42. However, TBOM exercises control over MCM related to the TBOM accounts transferred to MCM. Examples include: requiring reporting to TBOM, auditing MCM, setting policies and procedures regarding TBOM accounts, and maintaining the right to recall TBOM accounts.

43. Despite the Letters of Representation, in an attempt to collect the alleged debt, MCM initiated a collection campaign and began communicating directly with Plaintiff. For example, MCM began sending emails directly to Plaintiff, including on July 22, 2026, and July 30, 2026 (the "July Letter").

44. Plaintiff received and read the July Letter.

45. Plaintiff did not consent to MCM's direct communication with Plaintiff.

46. Plaintiff's attorneys did not consent to MCM's direct communication with Plaintiff.

47. MCM did not send the July Letter to Plaintiff's attorneys.

48. MCM did not attempt to communicate with Plaintiff's attorneys concerning the alleged debt, prior to attempting to collect the alleged debt directly from Plaintiff in the July Letter.

49. MCM has a pattern and practice of communicating with consumers after receiving attorney representation letters and/or cease and desist letters.

50. MCM has a pattern and practice of communicating with consumers after receiving notice of consumers' attorneys' representation.

51. MCM has a pattern and practice of communicating with consumers after receiving notice of consumers' attorneys' information.

52. In support of the foregoing, and by way of example only, consumers in other lawsuits have alleged substantially the same conduct as alleged herein against MCM:

- *Carol Medof v. Midland Credit Management, Inc.*, 3:24-cv-00382-JLS-AHG (S.D. Cal.);
- *Kimberly Kennedy v. Midland Credit Management, Inc.*, 24-cv-01748-LL-MMP (S.D. Cal.);
- *Martha Mihich v. Midland Credit Management, Inc.*, 2:24-cv-06498-FMO-KS (C.D. Cal.);
- *Tonya Zimmern v. Midland Credit Management, Inc.*, 3:24-cv-00042-MCR-HTC (N.D. Fla.);
- *Maria Urcola v. Midland Credit Management, Inc.*, 2:24-cv-01049-JSM-SPF (M.D. Fla.);
- *Hobson v. Midland Credit Management, Inc.*, 4:23-cv-2759 (S.D. Tex.);
- *Roush v. Midland Credit Management, Inc.*, 2:23-cv-2509 (D. Kan.);
- *Joan Chin v. Midland Credit Management, Inc.*, 903834024 (Supreme Court of the State of New York – Albany County);
- *Schuhmann v. Midland Credit Management, Inc.*, 3:24-cv-00132 (N.D. Cal.);
- *Stewart v. Midland Credit Management, Inc.*, 24-cv-0069-W-JLB (S.D. Cal.);
- *Quick v. Midland Credit Management, Inc.*, 3:23-cv-00543-JLS-AHG (S.D. Cal.);
- *Beam v. Midland Credit Management, Inc.*, 4:23-cv-945, (N.D. Tex.), and
- *Sandra Kaiser v. Midland Credit Management, Inc.*, 2:25-cv-00702, (E.D. Pa.).

53. MCM had actual notice of the Letter of Representation and Additional Letter of Representation.

54. The July Letter alleged that Plaintiff no longer owed money to TBOM, but now owed $1,748.19 to MCM.

55. However, Plaintiff was never involved in any transaction with MCM for $1,748.19

and never entered into any contract with MCM for the payment of $1,748.19. Plaintiff was never indebted to MCM, and was never indebted to MCM for $1,748.19. MCM never extended credit to Plaintiff for $1,748.19. MCM does not possess competent proof that Plaintiff owes $1,748.19 to MCM. MCM holds no legal right, title, or interest in $1,748.19 owed by Plaintiff.

56. Upon information and belief, MCM claims it purchased Plaintiff's account from TBOM and it is therefore entitled to payment from Plaintiff.

57. Upon information and belief, MCM's alleged purchase of Plaintiff's account was ostensibly made pursuant to a certain Master Account Sale Agreement, and a certain Account Sale Addendums. These agreements are referred to collectively herein as the "Master Account Sale Agreement."

58. However, upon information and belief, the Master Account Sale Agreement, does not memorialize a "true sale" of Plaintiff's account from TBOM to MCM.

59. Upon information and belief, the Master Account Sale Agreement, does not memorialize a "true sale" of Plaintiff's account from TBOM to MCM because, *inter alia*, TBOM retains control over the accounts.

60. Upon information and belief, the Master Account Sale Agreement, does not memorialize a "true sale" of Plaintiff's account from TBOM to MCM because, *inter alia*, TBOM retains audit rights over MCM.

61. Upon information and belief, the Master Account Sale Agreement, does not memorialize a "true sale" of Plaintiff's account from TBOM to MCM because, *inter alia*, TBOM retains the right to require MCM to provide regular reporting.

62. Upon information and belief, the Master Account Sale Agreement, does not memorialize a "true sale" of Plaintiff's account from TBOM to MCM because, *inter alia*, TBOM

retains the right to recall and/or repurchase and/or exchange the accounts from MCM.

63. Upon information and belief, the Master Account Sale Agreement, does not memorialize a "true sale" of Plaintiff's account from TBOM to MCM because, *inter alia*, TBOM retains recourse from MCM concerning the accounts from MCM.

64. Upon information and belief, other than the Master Account Sale Agreement, MCM claims no other right to payment from Plaintiff.

65. On July 23, 2026, and August 27, 2026, Plaintiff's counsel again notified MCM of its representation of Plaintiff concerning the alleged debt and demanded that all further direct communications with Plaintiff concerning the alleged debt cease.

66. The acts of Defendant as described in this Complaint were performed by Defendant or on Defendant's behalf by their owners, officers, agents, and/or employees acting within the scope of their actual or apparent authority. As such, all references to MCM in this Complaint shall mean MCM or their owners, officers, agents, and/or employees.

67. Defendant's conduct as described in this Complaint was willful, with the purpose to either harm Plaintiff or with reckless disregard for the harm to Plaintiff that could result from Defendant's conduct.

68. Plaintiff has the right to live without being subject to false claims from MCM. Plaintiff has the right to be free from invasions into her privacy and intrusions upon her solitude and seclusion. Plaintiff has the right to be free from harassing, annoying, oppressive, and abusive conduct. Defendant infringed upon Plaintiff's rights, causing Plaintiff concern, worry, loss of time, emotional distress, and economic harm.

69. As a result of Defendant's conduct, Plaintiff suffered an intrusion into Plaintiff's right to solitude and seclusion.

70. As a result of Defendant's conduct, Plaintiff suffered an intrusion into Plaintiff's right to quiet enjoyment of life.

71. As a result of Defendant's conduct, Plaintiff suffered an intrusion into Plaintiff's attorney-client relationship.

72. As a result of Defendant's conduct, Plaintiff began to question and lose faith in Plaintiff's attorney-client relationship.

73. As a result of Defendant's conduct, Plaintiff has suffered inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

74. Plaintiff's injury-in-fact is traceable to the actions or inactions of defendant MCM.

75. Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

**FIRST COUNT**
**Violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(10), and 1692f**

76. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

77. The Plaintiff is a "consumer" as that term defined by the FDCPA.

78. MCM is a "debt collector" as that term is defined by the FDCPA.

79. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

80. The July Letter is a "communication" as that term is defined by the FDCPA.

81. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

82. 15 U.S.C. § 1692d provides, generally, that a debt collector may not engage in conduct the natural consequence of which is to harass, abuse, and/or oppress.

83. 15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false,

deceptive, or misleading representation or means in connection with the collection of any debt.

84. 15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt.

85. 15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

86. 15 U.S.C. § 1692f prohibits a debt collector from using unfair or unconscionable mean in an attempt to collect a debt.

87. An allegation by a debt collector that a consumer owes a debt to a certain entity when the consumer does not owe a debt to that entity is a violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(10), and 1692f.

88. An allegation by a debt collector that a consumer owes a certain amount of money when the consumer does not that amount is a violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A) and 1692e(10).

89. As previously stated in this Complaint, Plaintiff did not owe the amount the July Letter alleged is owed to MCM by Plaintiff.

90. The contention that Plaintiff owed the alleged debt to MCM, when Plaintiff did not owe the alleged debt to MCM, amounts to conduct the natural consequence of which is to harass, abuse, and/or oppress in connection with the collection of the alleged debt in violation of 15 U.S.C. § 1692d.

91. The contention that Plaintiff owed the alleged debt to MCM, when Plaintiff did not owe the alleged debt to MCM, is a false, misleading, and/or deceptive representation, in violation of 15 U.S.C. § 1692e.

92. The contention that Plaintiff owed the alleged debt to MCM, when Plaintiff did not

owe the alleged debt to MCM, is a false representation of the character, amount, or legal status of the alleged debt, in violation of 15 U.S.C. § 1692e(2)(A).

93. The contention that Plaintiff owed the alleged debt to MCM, when Plaintiff did not owe the alleged debt to MCM, is a false representation or deceptive means to collect or attempt to collect the alleged debt, in violation of 15 U.S.C. § 1692e(10).

94. The contention that Plaintiff owed the alleged debt to MCM, when Plaintiff did not owe the alleged debt to MCM, is a false representation or deceptive means to collect or attempt to collect the alleged debt, in violation of 15 U.S.C. § 1692f.

95. For the foregoing reasons, MCM violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(10), and 1692f, and is liable to Plaintiff therefor.

## SECOND COUNT
## Violation of 15 U.S.C. §§ 1692c(a)(2) and 1692c(c)

96. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

97. The Plaintiff is a "consumer" as that term defined by the FDCPA.

98. MCM is a "debt collector" as that term is defined by the FDCPA.

99. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

100. The July Letter is a "communication" as that term is defined by the FDCPA.

101. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

102. 15 U.S.C. § 1692c(a)(2), titled "Communication with the Consumer Generally," prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt

collector or unless the attorney consents to direct communication with the consumer."

103. As described herein, MCM violated 15 U.S.C. § 1692c(a)(2).

104. A violation of 15 U.S.C. § 1692c(a)(2) has a close relationship to an invasion of privacy.

105. A violation of Section 15 U.S.C. § 1692c(a)(2) is an invasion of privacy.

106. MCM invaded Plaintiff's privacy.

107. 15 U.S.C. § 1692c(c), titled "Ceasing Communication," prohibits a debt collector, subject to certain exceptions not relevant here, from communicating with a consumer in connection with the collection of any debt "[i]f a consumer notifies a debt collector in writing . . . that the consumer wishes the debt collector to cease further communication with the consumer."

108. 15 U.S.C. § 1692c(c) further states, "[i]f such notice from the consumer is made by mail, notification shall be complete upon receipt."

109. As described herein, MCM violated 15 U.S.C. § 1692c(c).

110. A violation of 15 U.S.C. § 1692c(c) has a close relationship to an intrusion upon the rights to solitude and seclusion.

111. A violation of 15 U.S.C. § 1692c(c) is an intrusion upon the rights to solitude and seclusion.

112. MCM intruded upon Plaintiff's rights to solitude and seclusion.

113. A violation of 15 U.S.C. § 1692c(c) also has a close relationship to interference with the attorney-client relationship.

114. A violation of Section 1692c(c) is an interference with the attorney-client relationship.

115. MCM interfered with Plaintiff's and her attorney's attorney-client relationship.

116. For the foregoing reasons, MCM violated 15 U.S.C. §§ 1692c(a)(2) and 1692c(c), and is liable to Plaintiff therefor.

## JURY DEMAND

117. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereto respectfully requests judgment be entered:

a. Finding MCM's actions violate the FDCPA; and

b. Damages against MCM, pursuant to 15 U.S.C. § 1692k; and

c. Reasonable attorneys' fees awarded against MCM, pursuant to 15 U.S.C. § 1692k; and

d. The costs incurred in this action; and

e. Awarding pre-judgment interest and post-judgment interest to Plaintiff; all together with

f. Such other and further relief that the Court determines is just and proper.

Dated: September 11, 2026

Respectfully Submitted,

*/s/Antranig Garibian*

**Antranig Garibian, Esquire**
Garibian Law Offices, P.C.
261 Old York Road, Unit 427
Jenkintown, PA 19046
*Counsel for Plaintiff*